## STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**BOBBY R. STEELE,**
**Claimant Below, Petitioner**

vs.)     **No. 17-0545**  (BOR Appeal No. 2051732)
(Claim No. 2016032115)

**KC TRANSPORT, INC.,**
**Employer Below, Respondent**

**FILED**

December 19, 2017
**EDYTHE NASH GAISER**, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Bobby R. Steele, by Reginald D. Henry, his attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. KC Transport, Inc., by Henry C. Bowen, its attorney, filed a timely response.

The issue on appeal is whether a compensable injury occurred. The claims administrator rejected the claim on September 21, 2016. The Office of Judges affirmed the claims administrator's decision on December 13, 2016. The Board of Review affirmed the Order of the Office of Judges on May 19, 2017. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Steele, a driver for KC Transport, Inc., alleged that he was injured on February 4, 2016, when his truck collided with another machine. Mr. Steele filled out a report of injury stating that the truck he was driving struck an end loader. Mr. Steele wrote that he injured his neck and had ringing in his ear. The physician's section was completed on March 14, 2016, at the Welch Community Hospital, indicating Mr. Steele sustained an occupational injury of a cervical sprain and otalgia.

1

On March 15, 2016, Jose Oyco, M.D., at Welch Community Hospital treated Mr. Steele mainly for poorly controlled diabetes. The truck collision was briefly discussed. However, Dr. Oyco referred Mr. Steele to orthopedics for further treatment. Mr. Steele was treated in the emergency department of Welch Community Hospital for neck pain, upper back pain, and lower back pain on March 24, 2016. Mr. Steele also continued to complain of ringing in his ears. He was diagnosed with a cervical strain and discharged in stable condition.

On April 1, 2016, Mr. Steele was treated in the emergency department of Welch Community Hospital for neck and back pain. Mr. Steele's neck pain radiated to his shoulders bilaterally. Mr. Steele had no improvement in his symptoms. The treatment note indicates Mr. Steele was waiting for an MRI approval, and he was given a work excuse for one week. The following week, Mr. Steele returned to the emergency department of Welch Community Hospital with cervical pain that increased with range of motion.

On April 10, 2016, Mr. Steele returned to the emergency department of Welch Community Hospital for neck and back pain that increased with movement. An x-ray of the chest was unremarkable. An x-ray of the cervical spine revealed uncovertebral joint arthrosis on the left at C5-C6. The lateral masses and C1 and C2 are shown to align. The impression was multilevel degenerative disc disease without cervical spine fracture. An x-ray of the lumbar spine revealed narrowing on the left at L3-4, L4-5, and L5-S1 and on the right at L4-5 and L5-S1. The impression was multilevel degenerative changes. Two days later, Mr. Steele was treated by Dr. Oyco at Welch Community Hospital for Type II diabetes mellitus, hypertension and hyperlipidemia. A truck collision is mentioned in Dr. Oyco's treatment note. He wrote that Mr. Steele had severe back and shoulder pain and that x-rays of Mr. Steele's cervical spine revealed degenerative osteoarthritis.

On May 9, 2016, Mr. Steele was treated in the emergency department of Welch Community Hospital for a motor vehicle accident, which occurred on February 4, 2016. Mr. Steele stated he had neck pain, a dull headache, ringing in the left ear, and bilateral arm shaking since the accident. A CT of the brain was unremarkable. A CT of the cervical spine revealed straightening of the normal cervical lordosis and narrowing of the C5-C6 intervertebral disc space. A chest x-ray was unremarkable. Mr. Steele was placed in a C-collar, prescribed medication, and discharged.

Mr. Steele returned to the emergency room on May 11, 2016, with back pain, neck pain, and a jerking left arm. Mr. Steele's neck pain increased with range of motion. His neck and lumbar spine had decreased range of motion. He was provided a work excuse until the end of the month. He was diagnosed with neck pain secondary to a motor-vehicle accident. A May 25, 2016, MRI of the cervical spine revealed multilevel degenerative disc disease most significant at C5-C6 in the form of disc space narrowing and left posterior spondylitic bar with moderate to severe narrowing of the left anterior thecal sac and mild to moderate narrowing of the left neural foramen by spondylitic changes. There were subtle impressions of the left anterior surface of the spinal cord by these changes at C5-C6 without any signal alteration of the cervical spinal cord.

On June 2, 2016, Mr. Steele returned to the emergency department with neck and back pain. Mr. Steele returned again on June 24, 2016, with similar complaints. On July 21, 2016, Mr. Steele was seen for low back pain and difficulty walking. Mr. Steele also had cervical pain. He was requesting physical therapy. Mr. Steele was diagnosed with lumbago and he was referred for physical therapy. On September 21, 2016, the claims administrator denied his application for benefits.

On November 16, 2016, three affidavits were completed. Kenny Compton completed an affidavit, which stated that Mr. Steele was involved in a motor-vehicle accident on February 4, 2016, when the coal truck he was driving hit an end loader. Mr. Compton wrote that both vehicles had headlights on. According to the affidavit, Mr. Compton asked Mr. Steele if he was hurt and he responded that he was fine. Mr. Compton also wrote that he and Mr. Steele had many interactions over the course of the next month or thereabout and that Mr. Steele never mentioned to Mr. Compton he was injured. According to Mr. Compton, the clear implication of Mr. Steele's statements and demeanor was that this incident was extremely minor and there was no possibility that he could have been injured. The affidavit states Mr. Steele's truck was not repaired for a couple months and that during this time, Mr. Steele was told that he was not allowed to return to work because he was in at least three incidents in which he ran into another vehicle or obstruction in his truck. Mr. Compton stated that he had serious concerns about his ability to safely drive. According to the affidavit, Mr. Steele came to Mr. Compton several times asking to return to work. However, Mr. Compton told Mr. Steele that he did not intend to allow Mr. Steele to go back to driving trucks. Finally, Mr. Steel asked for a cutoff, and Mr. Compton obliged. Mr. Compton stated that at that time, Mr. Steele never had reported any injury and had not filed a workers' compensation claim. Mr. Compton's affidavit states that he was very surprised to discover Mr. Steele filed a workers' compensation claim because Mr. Steele never reported an injury and behaved normally at all times.

Beverly Gilman completed an affidavit which stated that she was a heavy equipment operator for Hampden Coal, LLC on the date of collision. She was operating a loader on a mine site at approximately 6:30 a.m. It was dark but the weather was clear. Both she and Mr. Steele had the lights on their machinery on and collided at a very low speed. She noted that not only was she not injured but she was not even jarred around because the impact was so minimal. She and Mr. Steele both exited the machinery and discussed the accident. She stated that he asked her if she was hurt and she asked him if he was hurt. She watched him for the next several minutes, and he did not behave as if he was in any pain.

Eddie Compton wrote a statement regarding the vehicle collision. Mr. Compton stated he no longer worked for the employer but that he was a foreman for the employer from 2009 through 2016. Mr. Compton stated he went to the site of the collision immediately after it was reported. According to Mr. Compton, Mr. Steele reported that he was not injured. Mr. Steele behaved normally, and never showed any signs of injury. Mr. Compton stated he was surprised to learn Mr. Steele filed a workers' compensation claim because there was absolutely no sign that he was injured, he denied that he was injured, and he never reported any injury.

In an undated letter, Mr. Steele acknowledged that his truck hit an end loader on February 4, 2016. However, Mr. Steele alleged the driver of the end loader did not have her lights on. According to Mr. Steele, his truck sustained $26,000 worth of damage. According to Mr. Steele, the collision caused a big bruise across his stomach as well as back and neck pain. Mr. Steele stated that he did not get immediate medical attention for fear of losing his job and because he did not have medical insurance. Mr. Steele stated that he was terminated by the employer. He denied prior workers' compensation claims. An undated picture of the front of a coal truck shows a dent in the grill and bumper.

On November 17, 2016, Mr. Steele testified before the Office of Judges that he was a coal truck driver whose last date of employment was February 4, 2016. Mr. Steele stated that he struck an end loader with his truck but that the end loader did not have its lights on and was in the road. Mr. Steele acknowledged the above-described picture was the truck he was driving. According to Mr. Steele, he was travelling approximately ten miles an hour at the time of collision. After the collision Eddie Compton, completed an incident report. Mr. Steele also described his alleged injury that he had suffered a big bruise across his stomach that morning. But at that time, he did not know whether he was in shock or not. At the time of the wreck, he did not feel like anything was wrong. Mr. Steele stated that he went home and told his wife and that she wished for him to see a doctor. Mr. Steele testified that he first sought medical treatment for the alleged injury on March 9, 2016. The reason that he did not seek medical attention prior to this day was because he had no medical coverage, and he was afraid of being terminated. Mr. Steele stated that his symptoms consisted of throbbing knee pain, neck pain, and low back pain. Mr. Steele stated that he had no prior workers' compensation claims and no prior injuries. According to Mr. Steele, he had not been released to return to work, and he was attempting to obtain a prescription for physical therapy. Mr. Steele admitted that he applied for and received unemployment benefits after he was laid off. However, according to Mr. Steele, he stopped accepting benefits when he applied for workers' compensation benefits. Mr. Steele considered himself terminated by the employer. Elizabeth Steele, Mr. Steele's wife also testified at the hearing. Mrs. Steele testified that she was concerned about Mr. Steele when he returned home early on February 4, 2016, and showed her the bruise on his stomach. According to Mrs. Steele, Mr. Steele stated that he also injured his knee and neck.

The Office of Judges found that no compensable injury occurred. The Office of Judges found that Mr. Steele was involved in a motor vehicle accident on February 4, 2016, and that he did not report any injury or seek any medical treatment until March 9, 2016. Statements from Ms. Gillman in her affidavit indicate that Mr. Steele was not injured on February 4, 2016, and his collision was at a very low speed. Mr. Kenny Compton's affidavit stated that Mr. Steele repeatedly returned to the worksite looking for work and asked for and received a layoff slip in order to gain unemployment benefits. Mr. Steele never reported an injury when he received the layoff slip. It was only after he received the slip that he made an application for workers' compensation benefits. The Office of Judges found that Mr. Eddie Compton's affidavit was also consistent with both Mr. Kenny Compton's and Ms. Gillman's. The Office of Judges further found that the treatment notes when Mr. Steele visited the hospital were disproportional to any injury that could have occurred on February 4, 2016. The Board of Review adopted the findings

4

of the Office of Judges and affirmed its Order. After review, we agree with the consistent decisions of the Office of Judges and Board of Review.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: December 19, 2017**

**CONCURRED IN BY:**
Chief Justice Allen H. Loughry II
Justice Robin J. Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker